Judge Tucker.
The question which the Court is now called upon to decide, is upon the construction of the will of Wm. Carr the elder; wherein the testator, by express words, devises an estate for life to each of his three children, with remainder to the children of each, and in case of the death of either without children, remainders over to the survivor or survivors of his own children.—The particular clauses relative to his son Wm. Carr, jun. are thus stated:
He gives to William Carr sundry tracts of land, and among others, one recovered of T. Mason’s executors; and, after the death of the testator’s widow, Aga, and her children, during the natural life of the devisee: and, after his decease, to his child or children; if none, to his son John Carr, and his daughter Betsey Tebbs for life; and then to be equally divided between their children. And by a codicil he declares, that should all his dear children die without issue of their bodies, his wife still living, one half of the life estate to go to his wife during her natural life, with remainder over, &c.
The cause has been ably and elaborately argued by the counsel on both sides. On the part of the plaintiff, it is *289 contended that William Carr, jun. took an estate of inheritance, of which his widow, one of the plaintiffs, might be endowed, by virtue of the above devise; according to the rule in Shelley's case, that whensoever the ancestor, by any gift or conveyance, takes an estate for life, (though limited by any restrictive words whatsoever,) and, after, in, the same gift or conveyance, a limitation is made to his heirs, in fee, or in tail, the heirs shall not be purchasers;(a) and it makes no difference where the law creates the estate for life, or the party; or where there is an intervening estate; especially, if not of freehold;(b) and this rule we are told has never been shaken.(c)
To establish the application of this rule to the present case, the counsel for the plaintiff have adduced a number of cases where the limitation over has been made to issue of the first taker; in which he has been adjudged to take an estate tail, according to the rule in Shelley's case: and then, reasoning by analogy, they contend that, as the words “ issue" and “ children" both mean the same thing, in a natural sense, they are to be taken as meaning the *same thing also in a technical sense; and hence infer, that whenever an ancestor takes an estate of freehold, and, in the same will, there is a limitation over to his children, the children shall not take as purchasers. In other words, the estate so limited shall be construed to vest an inheritance in the first devisee, whatever words the testator may have used to shew he meant to give an estate for life only. That the words “ heirs," “ issue" and “ children" are not synonymous, must be known to every man the least conversant with legal distinction. By the common law a conveyance to a man and his heirs, gives him an estate in fee-simple, the highest estate in lands that a subject could have: one to him and his issue would only create an estate for life; to him and his children, if he had any at the time, would have created a joint-tenancy with them for life only.(d) Again, the word “ heirs" is a mere term of art to designate the persons to whom an estate in lands should, either immediately, or remotely, descend; and, as it respects real estate, must, when not explained by other words, or by the context, always be understood in a technical sense and no other. The word issue in a will is either a word of purchase or of limitation, as will best effectuate the intention of the testator; it is sometimes singular, sometimes plural, sometimes a word of limitation, sometimes of purchase; but must always be construed according to the intention of the will or deed wherein it is used; and it is said to be a rule, that, where an ancestor takes an estate of *290 freehold, if the word “ issue" in a will comes after, it is a word of limitation;(a) and then it always means heirs of the body; that is, the first, second, third, fourth, or tenth son in succession, one after another, or the first, second, third, and tenth daughter collectively. The word children is not a word of art; it has a natural sense, in which it is most generally used; when applied to the remote descendants of any person, it is altogether a figurative expression; thus we read of the children of Seth; the children of Ham; and the children of Israel. In the latter instance it is used to designate a whole nation. But, when not used in this figurative sense, it means the immediate offspring of a man or woman; it has indeed, in a few cases, been construed, to mean grandchildren,(b) and even great-grandchildren.(c) But this construction is to be admitted only where no other construction can be made.(d) I have met with no case where, in a devise by way of remainder, the word *children hath had the same sense affixed to it, as heirs of the body; that is designating them as takers of an estate of inheritance in succession. Here the analogy between the words “ issue” and “ children” seems to fail. The former, according to Gould, Justice,(e) is used in the statute de donis promiscuously with the word heirs; a strong reason for the technical sense which it has obtained; it comprehends, according to the same Judge, the whole generation, as well as the word heirs; and, in his judgment, it is more properly, in its natural signification, a word of limitation, than of purchase. The same has certainly never been said of the word children. On the contrary, where a devise was to John White, for life, (he then having no children,) and from and after his decease, or other determination of his estate, to the male children of the said John successively, one after another, as they are in priority of age, and to their heirs, and, in default of such male children, to the female children of the said John, and their heirs; and, in case the said John should die without issue, remainder over to the testators grandson in fee-simple; the Court of Common Pleas decided, after five several arguments, that John White took only an estate for life, and not an estate tail.(f) Much has been said as to the rules of construction in the case of wills; There is one general rule, equally for Courts of Equity and for Courts of Law, applicable to all wills; which the Courts are bound to apply, however they may condemn the object. The intention is to be collected from the whole will taken together. Every word is to have its effect. Every word is to be taken according to its natural and common import; and, *291 if words of art are used, they are to be construed according to the technical sense, unless upon the whole will it is plain that the testator did not so intend;(a) and by the late President of this Court, in the case of Kennon v. M'Robert, it was said, “ if the testator use legal phrases, his intention “ should be construed by legal rules; if he use those that “ are common, his intention according to the common understanding of the words shall be the rule.”(b) The same enlightened Judge hath told us, " that the intention “ of the testator is to give the rule of construction, is declared by all Judges both ancient and modern; and Lord “ Holt and some others more modern, emphatically call " that intention the polar star which is to guide our decisions.”(c) Adopting the testator’s intention in the present case, *as the cardinal point by which we are to be guided, can we fail to discover that his primary and general intention, which pervades his whole will, and is confirmed by the context in every part of it, was to give to each of his children a life estate only, in the property respectively bequeathed, or devised to them; with contingent cross remainders to each other; in the event that either of them should die without children. There is not in the whole will a single technical word that I can discover; of course, the construction is to be made according to the common understanding of the words he has used. The word “ children” is therefore to be construed in its natural sense, and not strained to mean heirs, as the counsel for the appellants would have it; which would go to defeat the obvious intention of the testator, by giving an estate in fee-simple to each of his children, instead of an estate for life, according to the express words of his will eight times repeated. The amphibious word issue indeed occurs once in the codicil; but, in such a manner as to shew that the testator did not mean to use it as a word of limitation, and is well explained by the context to mean children living at the death of the testator's children respectively. “ Should “ all my dear children die without issue of their bodies, my “ dear wife living, one half of the life estate to go to my “ dear wife during her life, the other half to Thomas Chapman," &c. The contingency thus intended to be provided against, is dearly described, and must happen, if at all, within a few years after the testator’s death, and during the life of his widow; leaving no doubt of the sense in which the word is used.
I shall now cite a few cases which appear to me to support the opinion I have given.
*292 In Wild’s case(a) there was a devise to “Rowland “Wild and his wife; and, after their decease, to their "children." They then having children, it was adjudged they took an estate for life only; and, though it was admitted, if A. devises his lands to B. and his children, or issue, and he hath not any at the time of the devise; that the same is an estate tail; (for that the intent of the devisor is manifest and certain that his children or issue should take; and as immediate devisees they cannot, because they are not in rerum natura; and, by way of remainder, they cannot, for that was not his intent;) yet it was resolved, that, if a man, as in the case at bar, devise land to husband and wife, and, after their decease, to their children, or the remainder to their children; in that case, although *they have no child at the time, yet every child which they shall have after, may take by way of remainder, according to the rule of law; for the intent appears that the children should not take immediately, but after the decease of Rowland and his wife. The most sharpsighted legal casuist could not discover any other difference between the case thus put, and that upon which we are to decide, except that, in the former, the devise is supposed to be made to a husband and wife; in the other, to William alone; unless that, in the case before us, the testator has superadded the words during his natural life, which, without altering the sense, serve to shew the intention of the testator in a stronger light than in the case supposed.—But, as it was said in Peacock v. Spooner,(b) that Wild’s case was not allowed to be law, it may not be amiss to observe, that the question in that case arose upon the words “heirs of the body" and not upon the word “children." And that the resolution in that case was afterwards overruled in Webb v. Webb, in the House of Lords.(c) In the case of Warman v. Seaman and Pratt,(d) Judge Rainsford, arguing upon the distinction between issue and children, said, “ The word ‘ issue,’ ex vi termini is nomen collectivum, and takes in all issues to the utmost extent of the “ family; as far as the words heirs of the body would do:" and observed, that “ it was resolved in Wild’s case, that a " devise being to father and mother, and after their deaths “ to the children, the word children shall be a name of “ purchase and not of limitation, and they shall have but “ an estate for life: but had it been to their issues, (as in “ the case before him,) that the word issues should have “ been construed a word of limitation, and not of purchase;" and so it was lately resolved in the Exchequer *293 Chamber; and a judgment, given in the King’s Bench to the contrary, was reversed upon the authority of Wild's case. This passage is cited and approved by Grose, Justice;(a) and in the same case of Warman v. Seaman, the Lord Chancellor declared that he had considered the opinion of Judge Rainsford, and the reasons thereof, and was satisfied with it: for the resolution in Wild’s case, on which he grounded his former opinion, would not hold, if, instead of “ children” the word “ issue” had been in that case, and that, when the Judges of the King’s Bench had lately held otherwise, and fallen into the like error, their judgment was, for that very cause, reversed in the Exchequer Chamber.(b) This book has, indeed, been denounced as one *of no authority;(c) whether for want of the imprimatur of the Lord Chancellor and Judges, formerly prefixed to books of reports, I cannot tell. But the name of Sir Heneage Finch, the author, who is mentioned by Judge Blackstone(d) as a person of the greatest abilities, and most uncorrupted integrity, endued with a pervading genius, which enabled him to discover and pursue the true spirit of justice, may weigh against the opinion even of Lord Hardwicke; especially where this book is cited and relied on by other Judges. Be this as it may, Lord Hardwicke himself decided the case of Ives v. Legge precisely upon the same principles. There the devise was to Marthana Legge, to hold to her own use during her natural life; and, after her decease, to the children of her body begotten, and their heirs; and, in default thereof, to Wm. Legge. Lord Hardwicke decided, that here was a vested remainder in Wm. Legge, and that Marthana took only an estate for life.(e) And we have a similar decision by the same Judge in Godwin v. Godwin,(f) where the devise was to Joan, the wife of Sir Peter Seaman, for and during her life; and afterwards to her children, to be equally divided between them, share and share alike: and, for want of such children, to the testator’s right heirs. Lady Seaman had two children that born, and one born after; and the question war, what estate the after-born daughter had under that devise? And Lord Hardwicke said, wherever there is a remainder to children by settlement or will, it is not material whether they are alive or not; for it will vest A different parts and proportions, as they come in esse: and he held that they took as tenants in common for life only; and cited Wild’s case as being to the same effect. In the case of Doe v. Perryn,(g) the devise was to Dorothy Comberback for life; remainder to trustees to preserve contingent remainder; remainder to *294 all and every the children of D. C. begotten by her husband, and their heirs forever, equally to be divided between them; remainder over: and it was held that D. C. took an estate for life only, with remainder to her children in fee-simple. And Ashhurst, Justice, said, that the limitation to Dorothy's children was contingent until they were born; but it became vested on the birth of the first child, subject to be diminished in quality as other children of Dorothy should be born: and, on the birth of Dorothy's first child, the subsequent limitations were defeated.
In the case of Carter v. Tyler,(a) it was strongly contended, notwithstanding the clause in our act *of Assembly respecting estates tail, that estates might yet be limited to provide for contingencies in families; and Judge Pendleton, in delivering the opinion of the Court, said, “ of this there is no doubt; a parent may guard against " an improvident child’s wasting his provision, by limiting “ his interest or power over it. He may give an estate “ for life, and limit remainders over upon it.” This is precisely what the testator evidently intended in the present case, and what I conceive he has done. As to the negroes, I see no reason to distinguish the operation of the will, as to them, from its operation on the real estate. The case of Higginbotham v. Rucker, which arose upon a verbal gift of a slave to the daughter and the heirs of her body, and, in case she died without issue, (that is, children of her body, as explained by the Jury in their special verdict,) to return to the donor, is certainly a stronger case than the present. And the trust estate being directed to go “ as the other estate devised,” I can make no distinction as to that; and am, therefore, of opinion, that the decree of the Chancellor ought to be affirmed.
Judge Roane.
I will consider this case in two points of view.
1st. Independently of the act of 1776 docking entails, and the act of 1785 dispensing with the necessity of words of inheritance to pass a fee: and 2dly. As affected by those acts.
As to the first point of view, it will be found that Shelley's case is the substratum of the whole edifice. In that case it was ruled, that wherever the ancestor takes an estate for life, and after, in the same conveyance, a remainder is limited, mediately or immediately, to his right heirs, or to the heirs male or heirs female of his body, that, in such case, his right heirs, or heirs male or female, shall not be considered as purchasers, but shall take by descent. The *295 reason given for this is, that, as the heirs, or heirs male, &c. could not take as purchasers, not being in esse, and could only take through the ancestor, the estate for life was enlarged for their benefit. Another reason is given, from the parity and conformity that this limitation bears to a limitation to A. and his heirs, or to A. and his heirs male or female of his body: for as his gives an estate for life by implication, and more, so the other gives him the same in express words, and more; et express to eorum quæ tacite insunt nihil operatur.(a)
*As it is generally said that estates tail are implied for the benefit of the issue in tail, so, under the first reason just stated, a fee-simple is also raised in favour of the heirs, on the same principle: but it is evident that the rule in Shelley's case does not apply to any case, where the persons in remainder can take, and were intended to take as purchasers.
The rule in Shelley's case being thus established, other expressions deemed equal in effect with the words heirs of the body, such as issue of the body, and men children of the body, were also construed to enlarge the estate for life into an estate tail. It is justly said, however, in King v. Melling,(b) Ginger, on the demise of White v. White,(c) &c. that these words are stronger than the term chidren; that they indicate that the testator had an eye to estate tail; and that the word issue takes in the whole generation; is used synonymously with heirs in the statute de donis; and is more properly a word of limitation than of purchase. The expressions just stated, therefore, are much stronger to denote an estate tail, than the word “ children” used in the case at bar, or in Wild’s case, to be presently more particularly noticed. It is readily admitted that the word issue in a will, is either a word of purchase or limitation as will best effectuate the intention of the testator, Roe, on demise of Dodson, v. Grew.(d) In Roy v. Garnett,(e) it is said by the Court, (p. 32.) “ that the surviving sons not only might, but must take as purchasers; “ being to take, not in succession, but as tenants in common.” This position applies to the case before us, as the children of Wm. Carr are to take as tenants in common, by the very provisions of the will. In this same case of Roy v. Garnett it is said by the President that “ it has " been thought a circumstance of considerable weight, “ that issue (not children) must be taken as a word of limitation, where no words of inheritance are superadded " in the devise, because, in such case, if the issue take “ by purchase, they would only take an estate for life; " *296 and that hence a distinction has arisen, that where words " of inheritance have been superadded "in the devise to " the issue, the issue has been adjudged to take by purchase, " so as not to enlarge the estate of the ancestor; and this “ was Archer's case, 1 Co. 66.”
In the case at bar, the term is not only children, (certainly much less a term of limitation than issue,) but words of *inheritance are, in effect, superadded in the will, by the operation of the act of 1785, which gives a fee, wherever a less estate is not limited by express words, or does not appear to have been granted, conveyed or devised, by construction or operation of law.
In the same case of Ginger v. White, it is said that it is a mistake, that the terms issue or children in a will, where there are none in esse at the time, do as necessarily create an estate tail as the words “ heirs of the body” do in a deed; and that they shall only be so construed, where that appears to be the intention of the testator. How the intention was in the case at bar, will presently more particularly appear.
In the case before us, the devise was to Wm. Carr during his natural life, and, after his decease, to his child or children; if none, to John C. and Betsey Tebbs for life; and, then, to be equally divided between their children.
This devise for life to Wm. Carr, and which is said by the Chancellor, in his decree, to be no less than eight times repeated in the will, as relative to the several devisees, is certainly as strong as the devise to James for life, in the case of Roy v. Garnett; and which, as is said by the President, denoted the intention of the testator in that case to be, “ to devise an estate for life, as manifestly as if confirmed by one from the dead.” (p. 31.)
The devise for life in our case is, perhaps, taking the whole will into consideration, not less strong than the vaunted devise “ for life and no longer,” in the case of Robinson v. Robinson;(a) which last words “ no longer,” it was argued by the counsel in that case, and I think with some force, were certainly tautologous, and had really no force in them at all, beyond the former words limiting the estate for life.
Thus stands the strength of the devise in our case, as relative to the devisee, Wm. Carr; let us now see how it stands in relation to the ulterior limitation—
As upon the will, (exclusively of the codicil,) the limitation is, after the decease of Wm. Carr, to his child or children. In Wild’s case,(b) a devise of land to husband and wife; and, after their decease, to their children; *297 although they have not any child at the time, yet every child, which they shall have after, may take by way of remainder; for his intent appears that the children should not take immediately, but after the decease of husband and wife. This case emphatically applies to the one at bar: for it was *there so held, notwithstanding the children would only take an estate for life in remainder; whereas the children in question, in this case, will take a fee, by virtue of the forementioned act of 1785.
The case of Ginger v. White not only recognizes the above case of Wild, but is, perhaps, still stronger, and is very similar to the case at bar: it would bear out the opinion I now entertain upon the case before us, even if the term children used in the will were, by virtue of the provision in the codicil, enlarged to mean issue, and so as to comprehend children ad infinitum; which, however, I shall presently attempt to shew, is not the case. In the case of Ginger v. White, a devise to John for life; and, from and after his decease, to his male children successively, one after another, and to their heirs, and in default of such, to the female, &c. and in case John shall die without issue, (that term not restricted, as in the codicil in the case before us,) was held to pass only an estate for life to John. These two cases strongly apply to the case at bar. Wild’s case is expressly in point; admitting the case at bar to stand singly upon the word children mentioned in the will. The other case extends to our case as standing upon the will and codicil, and even admitting the term children, in the will, to be extended, by the codicil, to be commensurate with issue of the body collectively taken. But this is not the case. The provision of the codicil is, " should all “ my dear children die without issue of their bodies, my “ dear wife living, one half of the life estate to go to my “ dear wife, during her life, and the other half to go to “ Thomas Chapman,” &c. (persons in esse) “ during their “ lives,” &c. This limitation over, in favour of persons then living, clearly shews that the testator used the term issue, in this case, as synonymous with children, and not as importing descendants ad infinitum. Nothing is more clear than that the word “ issue” may be used in the one sense or the other, so as best to answer the intention of the testator. As, in this country, the term “ children” now carries a fee, there is less reason to strain it into a word of limitation, than in England, as every purpose is already answered.
Notwithstanding what is now said, some strong cases have been cited to shew, that an express estate for life may *298 be enlarged into an estate tail, to effectuate the manifest intention of the testator. It was to effectuate such intention, that the devise in the case of Robinson v. Robinson, was decided to enlarge the life interest into an estate tail: *but there are some strong features in that case, which do not exist in the present. In that case, L. H. and his son, were to take the name of Robinson; and it was deemed improbable that the testator would impose and perpetuate the name upon him, and yet, that the estate, in consideration of which it was to be assumed, was to endure only for life. In that case, also, the “ perpetuity” of his presentations was given to L. H. (subject, &c.) “ in the “ same manner and to the same uses as he had given his “estate;" thereby explaining the former devise by the latter.
The case of Roe, on the demise of Dodson, v. Grew,(a) proves nothing as to the case before us; the limitation over being, after the decease of G. G. to the use of the issue male of his body lawfully to be begotten; words peculiarly importing an estate tail. Nor does the case of Roy v. Garnett, depending on a will made long before the revolution, (on whatever grounds decided by the Court,) prove any thing; the words in the limitation over being, “ if my son James die without issue male,” &c. not “ without children."
In all those cases, therefore, there was a general intention strongly appearing in the will, (which does not exist in the case before us,) overruling the particular intention, and enlarging the life estate into an estate tail. This, however, can only be done (where the life estate is express) to effectuate the manifest intention of the testator.
In the case at bar, nothing is gained in favour of intention, (and, therefore, no such intention shall be admitted to have existed,) by construing the limitation to be an estate tail, for it is eo instanti converted into a fee-simple, by virtue of a general law, of which the testator could not have been ignorant. It is more agreeable to his intention that his grandchildren, (the children of Wm. Carr,) for whose interest he seems anxiously to have intended to provide, should succeed in remainder, and their posterity under them for ever, by virtue of the act of 1785, (although possibly some of the grandchildren of Wm. Carr, the son and devisee, might not, in consequence of their father’s dying in their life-time, come within the descriptio personae stated in the will, and therefore might be excluded,) than that the fee-simple interest should at once vest in the first *299 devisee, and he be thus enabled to disinherit all the testator’s progeny descending through him: and the Chancellor is certainly very correct in saying, that the intention of *the testator to provide for his grandchildren, is the sole argument used on the part of the appellant’s counsel, to authorise and produce a destruction of their interests !
Such are my impressions upon the first point above stated: and, if upon the mere doctrines of English law upon this subject, an estate for life only would accrue to the devisee of Wm. Carr, this is much more the case, when we take into our consideration the two acts of 1776 and 1785.
The first cuts up by the roots the pretence of implying an estate tail for the benefit of the issue, and the second guaranties to a son or child, claiming in remainder as a purchaser, the absolute fee-simple property in the land. This last consideration has before been stated, as one which lessens the necessity for construing the term issue to be a word of limitation rather than of purchase. Nothing is more clear than that those acts, if they are to be taken into consideration in the present case, would make the appellant's case much weaker than it is, in so far as we are inferring an intention on the part of the testator to provide for the issue of the devisee.
But in the case of Tate v. Tally, this Court concurred in opinion with the Legislature, that, in construing what was or was not an estate tail, we should have reference to the former laws, and that, as to the construction to be made in relation to that point, we should inquire what the “ law “ aforetime (i. e. before 1776) was;" and one of the Judges in that case said, with great propriety, “ that the intention “ of the act of 1776 was not to alter the established rules " of construction.” In a case, however, where the intention of the testator is alleged, under pretext of providing for his issue, but in reality to infer an estate which will defeat them, it would seem proper to rebut that allegation, by resorting to a posterior general law, without an ignorance of which, it is impossible that any such intention could have existed on the part of the testator.
In the case of Tate v. Tally, it was argued by one of the counsel, (who differed widely in opinion from the appellant’s counsel in this case,) that as estates tail were implied for the benefit of the issue, and as, since 1776, entails are destroyed, and the benefit to the issue no longer exists, the reason of the rule ceasing, the rule ought also to cease.
*300 The counsel alluded to in that case appears, for a moment, to have forgotten that the reasons (or some of them) in Shelley's case, have also ceased, and yet that the rule continues; that although the feudal reason of requiring *words of inheritance to carry a fee has also, perhaps, ceased, it was not for this Court, but for the Legislature, by the act of 1785, to alter the rule itself; that it is better, perhaps, to have some established rules of property, after the different reasons thereof have passed away, than to be in a perpetual state of uncertainty whether the reason of the rule exists or not; and that, so far from the Courts having power to abolish the rule in question on this ground, the Legislature have positively set up, e contra, the whole system of rules in relation to estates tail: although eodem statu it destroyed (as to many cases) the reason of the rule: and a similar power belonged to, and has since been exercised by, succeeding Legislatures.
On these grounds then, that, neither before nor since the act of 1776, a greater estate than one for life can be construed to have passed to William Carr by the will of his father, I am of opinion that the decree of the Chancellor is correct, and ought to be affirmed.
Judge Fleming.
This case has been so fully, and so ably investigated and elucidated by the Judges who have preceded me, that little remains for me to say; as it would be a waste of time again to travel over the same ground; and I shall only observe that it is a rule too well settled to need repeating here, that in the construction of a will, the intention of the testator is to govern in every case, where it does not contravene a well established rule of law: and it was well observed by the late venerable and enlightened President of this Court, “ that adjudged cases have more “ frequently been produced to disappoint, than to illustrate “ the intention; and that where such intention is apparent, “ cases must be strong, uniform, and apply pointedly, before they will prevail to frustrate that intention,” And it appears strange to me that so much pains have been taken, and labour spent in the case now before us, in attempts to prove that the words used in the devise to Wm. Carr, gave him, by implication, an estate which is now (and at the time of making the will had long been) unknown to our laws; that it might be magically transmuted into an estate in fee; in order to frustrate and defeat the plain, manifest will and intention of the testator. The case appears to me so clear, that I shall only add my hearty concurrence in the opinion that the decree ought to be affirmed.
*302 *Judge Lyons. I shall make short work of all questions arising on the construction of wills made since the act of 1776: so far at least as it may be necessary to decide whether the testator meant to pass a fee tail or not. I will not suppose, after that act, that a man intended to convey an estate tail, (which the law has expressly abolished,) unless plain and unequivocal words are used, such as would of themselves create a fee tail, without resorting to implication; as a devise “to A. and the heirs of his body,” or “to “ A. and if he die without issue,” &c. To fulfil the plain and manifest intention of the donor, the limitation must be equally plain and express; but not an implied limitation by mere construction to enlarge an express estate for life to an estate in fee or fee tail. For, if the donor did not mean an estate tail, but only used words which, by construction, might be so implied, in order to fulfil his intention; are they now, without necessity, and by implication only, to be construed into a fee tail to defeat that intention? The construction ought to be as near the apparent intention of the parties as possible, and as the law will permit. Where words are doubtful we should inquire into the intention; and, if that be clear, we should put such a construction on the words as will best carry the intention into effect, and reject that construction which manifestly tends to overthrow and destroy it, if such intention be not contrary to express rules of law. We are not to put words in a deed, or will, which are not there, nor construe them in direct opposition to the plain sense. But when the intention is plain and manifest, and the words doubtful and obscure, it is the duty of the Judge to be astute in endeavouring to find out such meaning in the words as will best answer the intention of the parties.(a) The construction contended for in this case by the appellant’s counsel, shews what the wit of man can do, when it is employed in making objections.
An estate tail in the case of land, has been raised by implication to enlarge even an express estate for life and give an estate tail to favour the testator’s intention: but ought not now to be made, by implication, to destroy that intention, when he meant only to give an estate for life: for the testator’s intention shall make words either an estate for life or an estate of inheritance, as shall best promote that intention.(b)
Apply the above rules of construction to the case before us; and the question is at once decided. The intention *of the testator to give an estate for life only to his son William is manifest from the whole context of his will. The widow of William is consequently not entitled to dower; and I concur in the opinion delivered by the other Judges, that the decree of the Chancellor be affirmed.

 1 Co. 99.

 2 Fonb. 70, 71.

 1 Bro. Ch. Cas. 215, 216. Jones v. Morgan.

 2 Bl. Com. 115. 6 Co. 17.

 2 Wilson, 324.

 1 Ves. 196.

 Ambler, 555. S C.

 4 Ves. jun. 698.

 2 Wilson, 324.

 Ginger v. White, Willes' Rep. C. P. 348.

 4 Ves. jun. 329.

 1 Wash. 100.

 1 Wash. 102.

(a) 6 Co. 17.

(b) 2 Vern. 196.

(c) Ibid. 668.

(d) Finch’s Rep. 282.

(a) 4 T. R. 88, 89.

(b) Finch’s Rep. 283.

(c) 3 Atk. 334.

(d) 3 Com. 55.

(e) Cited 3 T. R. 488. note.

(f) 1 Vez. 226.

(g) 3 T. R. 484.

(a) 1 Call, 185.

 5 Bac. Abr. Gwil ed. 732. tit Remainder, by the Lord Chief Baron Gilbert.

 1 Ventr. 214.

 Willes, 348.

 2 Wils. 322.

 2 Wash. 9.

(a) 1 Burr. 41.

(b) 6 Rep. 16, 3d resol.

(a) 3 Wils. 322.

(a) See Willes’ Rep. 327. Parkhurst v. Smith.

(b) See 1 P. Wms. 431. Target v. Gaunt.